## BAYBORO MARINE WAYS CO. v. UNITED STATES.

### Civ. No. 845.

District Court, S. D. Florida, Tampa Division.
July 29, 1947.

W. C. Brooker, of Tampa, Fla., for plaintiff.

Herbert S. Phillips, U. S. Atty., and Joseph E. Gillen, Ass't Dist. Atty., both of Tampa, Fla., for defendant.

DE VANE, District Judge.

This is a suit by Bayboro Marine Ways Company, a corporation, to recover a balance alleged to be due it by respondent for repairs on Coast Guard Boat No. 227. The parties are in agreement that the total work done on said boat amounted to $2,565.79. Respondent paid $765.79 and this suit is to recover a balance of $1,800 claimed to be due petitioner.

The evidence shows that in September, 1942, the United States Coast Guard entered into a contract with petitioner for repairs of certain types of Coast Guard vessels. Pursuant to this contract Coast Guard Boat No. 227 was delivered to petitioner for certain repairs. While undergoing these repairs an explosion occurred aboard the vessel damaging it in the amount of $1,800. The parties are in agreement as to the extent and amount of damages. The question before the court is whether the petitioner or respondent should bear the loss caused by the explosion.

The contract under which the work was done contained the following provisions: "The contractor will be held responsible for all damages sustained by the vessel while in his yard caused by fires, storm, collision or improper handling by contractor's employees." The evidence shows that the work performed by petitioner consisted of taking down, overhauling, repairing and reinstalling two gasoline engines. The evidence further shows that the vessel was delivered to the yard of Bayboro Marine Ways Company for repairs some time prior to March 3, 1943. Evidence also shows that at the time of the explosion the vessel was tied to a dock adjoining the property of Bayboro Marine Ways Company. How it got there is not disclosed by the evidence.

The first point raised by petitioner is that the vessel was not in the yard of petitioner at the time of the explosion and for this reason the provisions of the contract upon which respondent relies is not applicable or controlling. It is the opinion of the court that there is no substance to this contention of petitioner. There is no dispute that the vessel in question was delivered to petitioner in its yard for performing the work done on the engines. Petitioner offered no testimony to show that respondent subsequently placed the vessel at the dock alongside petitioner's yard or required peti-

tioner to do so. Petitioner cannot avoid its undertaking under its contract with respondent simply by moving the vessel or consenting to its removal to a point outside its yard.

As stated above, the evidence is in agreement as to the amount of the claim and as to the damages to the boat resulting from the explosion, but upon the question as to what caused the explosion and who was responsible and liable for it, the evidence is in hopeless conflict.

The Coast Guard conducted an investigation into the cause of the explosion shortly after it occurred and some of the witnesses who testified before the Coast Guard Board at the hearing, also testified before the court and the testimony given at the Coast Guard hearing by some of the witnesses is in conflict with the testimony given before the court. Fortunately for the court it is not necessary to analyze this testimony and decide who is telling the truth and where and when the truth was told about the cause of the explosion.

The evidence is not in conflict and the parties are in agreement that some days previous one of the engines had been reconditioned and reinstalled in the vessel and put in good operating condition. The explosion occurred after the second engine had been installed and while the employees of petitioner were attempting to make it operate satisfactorily.

The evidence shows that the vessel was equipped with a blower system used for the purpose of driving all explosive gases out of the bilge of the vessel before the engines were started; that this blower system had been disconnected on the previous day by an employee of the respondent and was not reconnected or used when the second engine was started and tested. The evidence is to the effect that petitioner relied upon natural ventilation to take care of any dangerous gases in the bilge of the vessel before and during the starting and testing of the second engine. The evidence is also in agreement that the second engine was started and operated for a short time before lunch, without any mishap; that it was shut off for certain adjustments; that it was again started after lunch and again shut off for other adjustments.

When the engine was started the third time the explosion occurred.

Petition contends that the conduct of employees of respondent caused the explosion, thereby rendering respondent liable for the damages to the motor vessel. The evidence upon which petitioner relies to sustain this contention may be summarized as follows:

1. The Coast Guard disconnected the blowers and batteries and permitted them to become unusable.

2. The Coast Guard was in a hurry for the motor vessel and directed petitioner to proceed regardless of the blowers.

3. A Coast Guard employee closed the door to a room inclosing the hatch to the engine room, thus stopping natural ventilation.

4. This act caused the accumulation of gas in the bilge of the vessel and brought about the explosion.

The evidence is in conflict upon all these contentions of petitioner, except that a Coast Guard employee disconnected the blowers and they were not used while the second engine was being installed and tested.

Conceding every contention advanced by petitioner to fasten responsibility upon respondent for the explosion, the court holds that they are insufficient to render respondent liable as contended by petitioner.

The law applicable to the authority of a Government employee is quite different to the law applicable to an agent or employee of a private individual or company. Only such Government officials as are authorized by law may modify or waive the provisions of a Governmental contract and persons dealing with a Government official must at his peril inquire into the authority of the official. See Jacob Reed's Sons v. United States, 273 U.S. 200, 47 S.Ct. 339, 71 L.Ed. 608, and Chesapeake & Potomac Telephone Co. v. United States, 281 U.S. 385, 50 S.Ct. 343, 74 L.Ed. 921; United States v. American Sales Corp., D.C., 27 F.2d 389; Rosenberg v. United States, 9 Cir., 31 F.2d 838, certiorari denied, 280 U.S. 571, 50 S.Ct. 28, 74 L.Ed. 623 and American Sales Corp. v. United States, 5 Cir., 32 F.2d 141.

There is no evidence before the court showing that any of the Coast Guard employees on the Coast Guard Boat No. 227 had authority to waive any of the conditions of the contract entered into between petitioner and respondent. In the absence of any authoritative waiver, it was petitioner's duty, under the law, if it desired to protect itself from liability under its obligation in its contract, to do all things necessary to prevent an explosion when the engines were started. If it was necessary to operate the blowers to remove the gas from the bilge to prevent an explosion when the engines were started, it was the duty of petitioner, under its contract with the Government, to refuse to start the engine until the blowers were reconnected and placed in operation. Petitioner cannot relieve itself of this responsibility by claiming an employee of the Coast Guard directed it to proceed without the blowers in the absence of a further showing that said employee had the authority to give such direction.

The evidence shows that it is a recognized safety and precautionary method in the operation of gasoline engines on a vessel like the one here involved to see that the area in which engines are located is thoroughly ventilated before starting them. The presence of blowers on this motor vessel was a warning that the engines should not be started without first operating the blowers. There is always a possibility that by reason of mechanical defects or otherwise there may be seepage of gas into the bilge from which combustible vapors will arise and if these vapors are allowed to remain in the bilge and in the engine room they are likely to be ignited by a spark, resulting in an explosion.

The parties are not in dispute upon this being the normal procedure, but petitioner takes the position that since it was acting under the direction of a Coast Guard employee in starting and testing the engine without using blowers that the respondent and not petitioner assumed the responsibility for the explosion in this case. As stated above the law governing this case is to the contrary.

The court holds that even giving petitioner the benefit of all testimony of-fered by it in support of its case, the petitioner has failed to make out a case against respondent.

The case is before the court on the Answer of the respondent denying its liability and on two set-offs and counterclaims. Each set-off and counterclaim is, in part, for damage to the vessel caused by fire and, in part, for the damage to the vessel caused by the explosion, which respondent contends was brought about by improper handling by petitioner's employees.

Upon these pleadings the court considers it appropriate to enter a judgment by which the petitioner takes nothing by this suit and respondent goes hence without day and a judgment will be entered accordingly.