## MOSES v. UNITED STATES.

District Court, S. D. New York.
July 6, 1939.

Moses & Singer, of New York City, for petitioner.

John T. Cahill, U. S. Atty., of New York City (Samuel Brodsky, Asst. U. S. Atty., of New York City, of counsel), for the United States.

CLANCY, District Judge.

Plaintiff's testator died on December 27, 1931. Payment of the estate taxes became due December 27, 1932. On December 22, 1932, in answer to a letter from the executor, the Commissioner wrote to him granting an extension of two months for the filing of the return. On December 24, 1932, the executor sent to the Collector a check for $20,000 and a letter enclosing it which stated that it was "to apply on account of the federal estate tax liability" of the decedent. To him was sent a receipt made out on the form ordinarily used for acknowledging tax payments. The form contains a notice and demand, in the "assessment" column of which was inserted the sum of $20,000 and in the "description" column the word "tax". On March 24, 1933, the return was filed showing a tax due of $9,612 which was assessed on June 10, 1933. On August 22, 1934, an additional assessment was made in the sum of $2,447.98. No interest was added for late payment. The excess of the advance payment made by the executor over the total of these two assessments was $7,940.02 which was refunded to him without interest on May 11, 1935. The executor accepted the check for this amount under protest on June 20, 1935. The first demand for repayment required interest and is dated August 31, 1934. There was later correspondence and at least once the Government excused its delay in making the repayment by the Collector's claim that he was awaiting advice from the solicitor for the department as to whether or not interest was payable. Whether, if the demand had been for principal only, a cause of action subsequently accrued for interest, we need not consider for the taxpayer made no such demand. The complaint asks for judgment for interest on $7,940.02 from December 24, 1932, the date of the original deposit for the executor, to May 11, 1935, the date of the repayment of the excess, which amounts to about $1,134.09 and further demands interest on this amount from May 11, 1935, to the date of judgment.

On these facts both parties move for summary judgment. The notation "A/C 9" is written in large hand on the receipt and typed too. A statement is made in the Government's brief that the check paid by the executor in 1932 was deposited to an account known as "9" which is something of a special account containing items of an indeterminate character. This we are ignoring. If the statement were contained in an affidavit, it might explain a bookkeeping method of the Collector, but would not be known to plaintiff nor understood by him if it were known.

The consent of the Government to liability for interest must be found in a statute (26 U.S.C.A. § 1671), and we think that unless the executor's entire payment to the Collector was accepted by that official as payment of a tax, there is no authority for the sustaining of his action or the granting of his motion. To determine the plaintiff's right to interest, we must determine the nature of the transaction between the taxpayer and the Collector on December 24, 1932, when the sum of $20,000 was delivered by the taxpayer to and accepted by the Collector. From the fact that no interest required by the statute for late payment of the tax was ever inflicted, we conclude that to the extent of the sum subsequently assessed as a tax, the money of the taxpayer was received by the Collector and later appropriated by the Commissioner as having been a payment on December 24, 1932. But, the balance of the sum of $20,000 could not have been a payment. "Payment is made by the debtor's delivering to his creditor money, or some other valuable thing, for the purpose of extinguishing the debt, which is received by the creditor for the same purpose." Persons v. Gardner, 122 App.Div. 167, 106 N.

Y.S. 616; Sokoloff v. National City Bank, 130 Misc. 66, 224 N.Y.S. 102. Payment of money is delivery by the debtor to the creditor of the amount due. Bronson v. Rodes, 7 Wall. 229, 19 L.Ed. 141. A payment does not occur unless "the money passes from the debtor to the creditor for the purpose of extinguishing the debt and the creditor must receive it for the same purpose." 21 R.C.L.Payment, 3; Bailey v. Commissioner, 5 Cir., 103 F.2d 448.

On the day when the taxpayer delivered his money to the Collector, the fact was known to both that the taxpayer's testator's estate was subject to the incidence of an estate tax. Whether or not it actually was subject to any tax, or whether an estate tax in any amount whatever actually was due, however, was apparently not then known to the plaintiff and certainly not known to the defendant. The amount of the tax which actually existed as a debt on that day was subsequently established. So much of the money then transferred as exceeded the amount of the tax fixed by the later computation was a wholly voluntary advance by the taxpayer and was not intended to be delivered by him nor was it accepted by the Collector as payment of any debt whatever for no corresponding debt then or ever actually existed, nor was any such indebtedness recognized even in error by the parties. When a taxpayer submits a return and accompanies it by payment, the Collector is put on notice then of the facts upon which the existence of a tax debt depends. He may, at that time, immediately check it. If he does not, he accepts the taxpayer's statement of the amount due and the parties are then in agreement and the whole amount received is given and taken as payment and it is for that reason that any excess contained in the amount so paid bears interest because the Government's interests require time for investigation and consideration of the facts. In this case the Government was powerless at the time the money was delivered to it to determine how much, if any, was actually due. The excess contained in this taxpayer's deposit was, in no sense, either payment or overpayment but a deposit made to suit his own convenience. This is true before and after assessment. Although the regulations do not explicitly authorize the Collector to accept unliquidated amounts in payment of estate taxes, we see no reason why any citizen should not have the right to defeat the addition of interest, 26 U.S.C.A. § 493

(a), by payment if he so desires. Neither do we see why the Government, for so accommodating him, should be required to pay interest on the money it may thus accept. The taxpayer has all the advantage; the computation of the debt is his own, and he is done no injustice by insistence on his own accuracy.

We think further that any construction other than that which we have made of the transaction embracing the delivery of the taxpayer's money to the Collector in December, 1932, would attribute to the Collector the doing of an act for which we can find no authority. 26 U.S.C.A. §§ 1541 and 1544. In that event, the Government would not be bound and the result would be the same. Wilbur Nat. Bank v. United States, 294 U.S. 120, 55 S.Ct. 362, 79 L.Ed. 798; American Sales Corporation v. U. S., 5 Cir., 32 F.2d 141; United States v. Globe Indemnity Company, 2 Cir., 94 F.2d 576.