DowNby, Judge,
delivered the opinion of the court.
The facts are removed from controversy by a stipulation and the questions for determination are not complicated.
The chief contention arises by reason of a provision in the contract for the assessment of liquidated damages for delay in performance together with the cost of inspection and superintendence during the period of delay, accom- *896 paniecl by a provision that no such deduction and charges shall be made for such period as, “ in the judgment of the contracting officer, approved by the Chief of Engineers, shall equal the time which shall have been lost through any cause for which the United States is responsible,” etc., and a finding by the contracting officer, set out in the findings, and approved by the Chief of Engineers, that “the entire delay in completion of this contract was the fault of the United States.” The basis of this conclusion is set out by the contracting officer and an argument is predicated thereon but it is not stipulated or even asserted that the officer acted in bad faith.
The Comptroller General declined to accept the finding of the contracting officer as conclusive but considered the facts bearing upon the question, concluded that the delay in the completion of the contract was because of the plaintiff’s failure in the first instance to fabricate the pipe according to specifications, and assessed and withheld $1,550 on account of liquidated damages and $125.30 as expense of inspection and superintendence.
Much has been said in argument on the question of the right of the Comptroller General to review the finding of a contracting officer clothed with powers similar to those given him by the contract in this case, in connection with which the accounting statutes of a century past are cited.
It is not our province to determine the powers of the Comptroller General unless, perchance, action taken by that officer becomes material for consideration in connection with the determination of the rights of litigants when those rights are asserted in this court, and in this instance, while) argument has included a discussion of those powers, we do not understand it to be contended that action by the comptroller could in any way conclude this court in the determination of the rights of the parties under the contract. Contractual rights once fixed in a proper contract executed by authority are inviolate. They may be forfeited by one party or the other, construction is permissible if the terms are ambiguous, but in the absence of ambiguity or forfeiture of rights by conduct, such a contract can not but be enforced as written.
*897 It has repeatedly been held by highest authority thait “ it is competent for parties to a contract, of the nature of the present one, to make it a term of the contract that the decision of an engineer or other officer of all or specified matters of dispute that may arise during the execution of the work shall be final and conclusive, and that in the absence of fraud or of mistake so gross as to necessarily imply bad faith such decision will not be subjected to the revisory powers of the courts.” The language quoted is from the Gleason case, 175 U. S. 588 at 602. The same principle is declared by the Supreme Court and this court in many other cases both antecedent and subsequent to that case. Among them see McBride Electric Co. v. United States, 51 C. Cls. 448, 456; Pacific Hardware Co. v. United States, 49 C. Cls. 327; McLaughlin & Co. v. United States, 37 C. Cls. 150, 188; Barlow et al v. United States, 35 C. Cls. 514, 546; Kennedy v. United States, 24 C. Cls. 122, 139; Merrill-Ruckgaber Co. v. United States, 241 U. S. 387, 393; Ripley v. United States, 223 U. S. 695, 704; United States v. Barlow, 184 U. S. 123, 133; United States v. Gleason, 175 U. S. 588, 602, 607; Chicago, Santa Fe & California R. R. Co. v. Price, 138 U. S. 185, 193; Martinsburg da Potomac R. R. Co. v. March, 114 U. S. 549, 550; Sweeney v. United States, 109 U. S. 618, 620; Kihlberg v. United States, 97 U. S. 398, 401. More recent cases in this court relied on by plaintiff are Yale da Towne Mfg. Co., 58 C. Cls. 633, and National Contract Co., ante. p. 441. In the first of these cases we said:
“Provisions in Government contracts reposing in some designated official the right to determine certain questions and making his determination thereof conclusive are of frequent occurrence. Such provisions are inserted largely for the protection of the Government, and the cases in which such a determination by the designated official has been upheld by the courts have been largely cases in which the rule has been invoked in favor of the United States and against the plaintiff, but the rule is none the less effective if perchance it occasionally may operate the other way.”
In the defendant’s brief the rule as stated above in the Gleason case and as applied by this court in the Brinck case, 53 C. Cls. 170, and in the two cases last above cited, is *898 referred to and expressly recognized, but, it is said that “While it is the generally accepted principle that when a Government enters upon a business venture or in the prosecution of public work undertakes to have such work done by an individual or a corporation rinder contract, as is customary in the field of business, it thereby divests itself of its sovereign character, submits to the usual laws and customs governing such transactions, and is bound by the obligations incurred just as would be a person or private corporation; it is submitted that the Government in its dealings is governed by the specific provisions of the several statutes hereinafter referred to and can not be regarded in the same light as individuals, private corporations, or the governments of States not restricted by such provisions of law.”
The statutes referred to are those relating to the accounting system culminating, after many years, in the Dockery Act of 1894, followed by the present accounting act, which embodies the main features of the Dockery Act but broadens to some extent the powers of the head of the accounting-system, now the Comptroller General, and provides reorganization.
If we could conceive it to be the theory of counsel that these acts authorized the Comptroller General to go behind the finding of the contracting officer and review the facts on which it was based and conclude that it was unjustified and therefore of no force and thus substitute his judgment for that of the contracting officer and thereby eliminate from the case the finding of the contracting officer when the rights of the parties are in this court for adjudication, the power of the Comptroller General in that respect would certainly be for our consideration, but while there is contention that the finding of the contracting officer is not binding on the General Accounting Office, we are still unwilling to conceive it to be the intention to carry the contention so far as stated above. It may be suggested that the whole question as to the effect of such a provision in a contract has been fully covered by the Supreme Court, the “last word” on the subject, in many cases, and we find no intimation that there is anywhere any authority to impair the obligations of valid contracts except under circumstances stated.
*899 The contention as to the lack of authority or the limitation upon the authority of the inspector at plaintiff’s plant relates to matters attending the finding" of the contracting officer and could not be for our consideration so long" as the finding of the contracting officer is not tainted by fraud or bad faith and is therefore conclusive.
It is sought to distinguish this case from those cited by the contention that in those cases the authorized officers were finding facts while the officer in this case was reaching a legal conclusion. If the contention could be of any force under any circumstances it is sufficient to say that the determination by the contracting officer that the delay was the fault of the United States ivas the determination of a fact.
Another question is presented. Plaintiff’s claim in the sum of $2,591.80 was settled in the General Accounting-Office and as settled $1,675.30 was disallowed and $916.50 allowed, for which latter sum a Treasury check was sent to plaintiff. Plaintiff made application to the Comptroller General for a review of the settlement and therewith returned the check. This was in exact compliance with the practice under the Dockery Act, when the settlement ivas first made by an auditor from whom, the appeal was to the comptroller, and is perpetuated now with the substitution of a division in the General Accounting Office for the office of the auditor. An acceptance of the check sent would have precluded an appeal or review, as now designated, of the settlement. After the Comptroller General, upon review, had sustained the settlement as made the check was again sent to plaintiff who received it and cashed it, without further protest, and five months thereafter brought this suit. It is contended that by this acceptance without further protest the plaintiff estopped itself from recovery in this court and decisions of this court are cited in support of the contention.
TTe have denied recovery in a number of cases where settlements made by auditors have been accepted without protest and where long delay or other circumstances have justified the conclusion that there was acquiescence in the settlement as made, and we have rather stringently held to the rule, for reasons stated, that there must be some course *900 of conduct repudiating the idea of acquiescence in the settlement. We adhere to the doctrine laid down in those cases and it may be said that, to the extent that the question has received the attention of the Supreme Court, this doctrine of acquiescence has met with approval. But the facts in each case must determine whether it comes within the rule and we think this case does not.
The plaintiff did protest the settlement as made. Whether in direct terms of protest we are not informed, but it declined to accept the payment tendered, returned the check to the Comptroller General and asked a review of the settlement, certainly an effective protest. When the Comptroller General affirmed the settlement as made and returned the check to the plaintiff, it had already protested this identic settlement to the General Accounting Office, it Avas left but one recourse, and of this it availed itself without undue delay. BecoA'ery is not precluded on this ground.
Upon the Avhole case we have determined that the plaintiff is entitled to recover and have directed judgment accordingly in the sum of $1,675.30.
Graham, Judge; Hat, Judge; Booth, Judge; and Camp-bebl, Chief Justice, concur.